TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00018-CV






R. H., Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-00513, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Appellant appeals an order terminating her parent-child relationship with both of her
children and appointing appellee Texas Department of Protective and Regulatory Services (the
"Department") permanent managing conservator. Appellant appeals on the following two grounds:
(1) that the evidence is legally and factually insufficient to support the termination of appellant's
parental rights and (2) that the testimony of Charles and Barbara Leverett should not have been
excluded by the trial court. We will affirm the decree of termination.


FACTUAL AND PROCEDURAL BACKGROUND


 In July 1997, appellant married Larry Duarte. At that time, appellant was 17 years
old and Duarte was 29 years old. The couple had two children: F.D., a boy, born on January 20,
1998, and V.D., a girl, born on December 29, 1998. During their marriage, appellant and Duarte
lived with appellant's parents or grandparents. 

 One month after the couple wed, Duarte served 150 days in jail following a 
conviction of injury to a child. He was found guilty of fracturing the skull and breaking the wrist
of his five-month-old daughter, D.C., who was born of a previous relationship. In addition to the
term of confinement, Duarte was sentenced to 10 years of probation and was required to attend child
abuse classes and counseling for anger management.

 Appellant claimed that she did not know of Duarte's violent past when they were first
married. Appellant testified that Duarte told her that he went to jail for stalking, violating a
protective order, and not participating in anger management classes. Appellant knew Duarte was
on probation, but claimed she did not know why he was going to court. She stated that she did not
ask Duarte about the proceedings because she felt that if Duarte had wanted her to know he would
have told her. Appellant also knew Duarte was taking family violence courses. Further, appellant
admitted to discovering legal paperwork related to Duarte's criminal case. Appellant later became
fully aware of Duarte's conviction for injury to a child, but she believed that the injuries to D.C. did
not happen and that the charges were falsified.

 After completing his jail term, Duarte returned to live with appellant at her
grandparents' home. F.D. was born on January 20, 1998. At times, appellant and Duarte both
worked nights, which resulted in F.D. being left with friends while appellant and Duarte were at
work. Appellant's friends, by her own admission, did not properly care for the child, and appellant
would often find F.D. covered in urine when she picked him up after work. On at least one occasion,
F.D. developed an infection from the urine. 

 On December 29, 1998, V.D. was born, and one week after her birth, V.D.'s
pediatrician declared her healthy. On January 10 or January 12, 1999, appellant left V.D. and F.D.
alone with Duarte while she went to the store. When appellant returned, she found both children
crying. She asked Duarte what happened, and Duarte told her that while all three of them were lying
on a bed, F.D., who was two-years-old at the time, kicked V.D. in the head. Later that evening,
V.D.'s head began to swell severely. Bruising on V.D.'s face and eye became noticeable a few days
later. 

 Appellant claims that she called the Austin Regional Clinic about V.D.'s head injury,
but could not see a doctor because the clinic was full. She also claims that she called a family
member, who was a nurse, for advice about the swelling and that she applied ice to V.D.'s head. 
Appellant, however, did not take V.D. to the doctor until January 14 for a previously scheduled
appointment. The physician's assistant, Chris Crocker, noticed bruising on V.D.'s eye and head. 
Crocker sent V.D. to the hospital because he suspected that she had a head injury. A CAT scan
revealed that V.D. had a fractured skull and some small areas of hemorrhage on the brain. Her leg
was also fractured. In addition, V.D. was diagnosed with pneumonia, which was not related to the
head and leg injuries.

 A radiologist indicated that V.D.'s leg injury was most likely caused by a violent
twisting or jerking. Doctors also determined that her head injuries were most likely intentional and
found appellant's numerous explanations for the injuries unconvincing. Appellant asserted, at
various times, that the injuries were caused by (1) F.D. kicking V.D.'s head; (2) Duarte dropping
V.D.; (3) her aunt's ex-boyfriend; (4) a neighbor; (5) pregnancy problems, including seizures and
V.D. hitting her head on appellant's hipbone while in utero; and (6) V.D.'s breach position during
birth. Doctors explained that it was physically impossible for F.D. to have caused V.D.'s injuries
because of his young age. Doctors also explained that V.D.'s injuries could not have occurred during
pregnancy or birth. On January 14, 1999, as a result of the opinions of the doctors and the excuses
of appellant and Duarte, the Department removed the children from their parents' care and placed
the children in foster care.

 When later confronted by social workers with the fact that V.D.'s injuries were not
accidental and that Duarte was under suspicion, appellant denied that Duarte could have hurt V.D. 
Even after appellant was confronted with Duarte's past conviction and probation for injury to a child,
appellant insisted that V.D.'s injuries occurred as Duarte had initially described: F.D. kicked V.D.
in the head. Duarte later confessed to Detective Brett Wilson that he threw V.D. on the bed and then
on the floor when she would not stop crying. When appellant was told of this confession, she
became upset and wanted to speak to Duarte. She then met with Duarte, and after a very short
meeting, they left the Department's offices holding hands.

 During the time between V.D.'s injury and Duarte's arrest for injury to a child on
January 19, 1999 for the injuries to V.D., appellant continued to live with Duarte. After he was
arrested and jailed, appellant continued to support Duarte financially and emotionally by visiting him
in jail and sending him letters and money. Appellant raised money for Duarte's criminal defense in
the case stemming from V.D.'s injuries. Appellant and her family consistently denied that Duarte
could have been responsible for V.D.'s injuries. 

 The Department gave appellant several chance to change her behavior in order to
regain custody of her children. Appellant, who is of average intelligence, received assistance from
the Department, including a protective parenting class, individual counseling, a psychological
evaluation, parenting classes, and individualized parenting skills lessons with a social worker. 
Appellant did not display improvement and failed to change her behavior and attitude toward her
children. Appellant was never able to admit that Duarte was responsible for the injuries V.D.
suffered. Appellant told a social worker that she planned to divorce Duarte in order to have her
children returned to her. However, once her children were returned, she intended to reunite with
Duarte after his criminal case was settled in court. The psychological evaluation indicated that
appellant was in denial about the abuse, and Dr. Poole, the psychologist who evaluated appellant,
stated that this denial put her children at risk of further harm. 

 During Department supervised visits with her children, appellant failed to attend to
their needs. Appellant called both children "brats" and slapped F.D. on the hands and buttocks. 
Appellant told F.D. that he was responsible for V.D.'s injuries and for his father being in jail. F.D.
cried when left with appellant and pulled away from her. V.D. also cried when appellant held her. 
Social workers instructed appellant to feed V.D. only a special formula because V.D. suffered from
reflux, a medical condition requiring a strict diet to prevent vomiting. Appellant, however, refused
to accept the diagnosis and, despite social workers' warnings, ignored the dietary constraints, often
giving V.D. juice, which aggravated V.D.'s condition. Appellant failed to change V.D.'s diaper
when appropriate, denying that it needed to be changed even after social workers prompted her to
do so.

 F.D. was developmentally delayed when he was first removed from appellant's care. 
At that time, F.D. was fifty-four weeks old, but his maturity age in gross motor skills was
approximately thirty-six weeks. F.D. was also developmentally delayed in his fine motor skills. His
maturity age in language development, which was assessed at thirty weeks, was also severely
delayed. Testimony indicated that these developmental delays were possibly related to a lack of
stimulation at home. Appellant claimed that F.D. was not delayed in development, stating that F.D.
could do many things on his own. After being removed from appellant's care, F.D. began treatment
with a speech pathologist and his language skills became age appropriate within eight months.

 The Department brought an action to terminate appellant's parental rights to F.D. and
V.D. The case was tried before a jury for five days in November 1999. The jury found by clear and
convincing evidence that appellant knowingly placed or knowingly allowed the children to remain
in conditions or surroundings which endangered the children's physical or emotional well-being, or
engaged in conduct or knowingly placed the children with persons who engaged in conduct which
endangered the physical or emotional well-being of the children, and that termination was in the best
interest of the children. Appellant's parental rights were terminated and the Department was
appointed permanent managing conservator of F.D. and V.D.

 Appellant then perfected this appeal. Appellant challenges the decision to terminate
her rights on the grounds that the evidence is legally and factually insufficient to show that
termination was in the best interest of both children and that the emotional and physical well-being
of the children was endangered by appellant or by the environment in which she placed them. 
Appellant also appeals the trial court's exclusion of the testimony of her grandparents, Charles and
Barbara Leverett, on the grounds that the testimony would not have unfairly surprised the
Department and that the testimony was controlling and not cumulative.


STANDARD OF REVIEW


 A court may terminate a parent-child relationship if it finds by clear and convincing
evidence that (1) the parent has engaged in any of the specific conduct enumerated in the Family
Code as grounds for termination and (2) termination is in the best interest of the child. Tex. Fam.
Code Ann. § 161.001(1), (2) (West Supp. 2001); Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987); Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). In this case, the grounds
for termination under the Family Code are based on sections 161.001(1)(D) and (E). See Tex. Fam.
Code Ann. § 161.001(1)(D), (E) (West Supp. 2001). Under these provisions, the trial court may
terminate the relationship if it finds by clear and convincing evidence that the parent has "knowingly
placed or knowingly allowed the child to remain in conditions or surroundings which endanger the
physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical or emotional well-being of the
child." Id. "Clear and convincing" means the measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be
established. Leal v. Texas Dep't of Protective & Regulatory Servs., 25 S.W.3d 315, 319 (Tex.
App.--Austin 2000, no pet).

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if the evidence
is so weak and contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
We will not substitute our judgment for that of the trier of fact merely because we reach a different
conclusion. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex.
App.--Austin 1992, no writ). The heightened standard of proof for terminating a parent-child
relationship does not alter the factual sufficiency standard of review at the appellate level. Leal, 25
S.W.3d at 320. Our factual sufficiency review of the evidence in a termination case necessarily
incorporates whether the challenged finding has been proven by clear and convincing evidence. Id.

 In deciding a legal sufficiency challenge to an adverse finding on an issue on which
the appellant did not have the burden of proof, we consider only the evidence and inferences tending
to support the finding and disregard all evidence to the contrary. Id. If more than a scintilla of
probative evidence supports the finding, it must be upheld. Id.

 Appellant also challenges the trial court's decision to exclude the testimony of
appellant's grandparents. Appellant must establish that the trial court abused its discretion by
excluding the testimony. See Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex. 1994). Appellant must
also show that the error is harmful. See Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 916-17 (Tex.
1992). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or
without reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). This Court may not reverse for abuse of discretion merely because
we disagree with the decision of the trial court. Id. at 242.

 

DISCUSSION


 Appellant contends that the evidence submitted at trial is both legally and factually
insufficient to support the termination of the parent-child relationship between appellant and her two
children, F.D. and V.D. Under section 161.001 of the Texas Family Code, the Department had the
burden to establish by clear and convincing evidence that appellant knowingly placed or knowingly
allowed the children to remain in conditions or surroundings which endangered the physical or
emotional well-being of the children, or engaged in conduct or knowingly placed the children with
persons who engaged in conduct which endangered the physical or emotional well-being of the
children, and that termination of the parent-child relationship was in the best interest of both F.D.
and V.D. See Tex. Fam. Code Ann. § 161.001(1)(D)-(E), (2). Appellant asserts that the evidence
at trial focused on the alleged physical abuse of V.D. and that almost no evidence was presented
regarding the endangerment and the best interest of F.D. Finally, appellant contends that the trial
court abused its discretion when it excluded the testimony of Charles and Barbara Leverett,
appellant's grandparents.

 The Department responds by asserting that it presented sufficient evidence of
appellant's endangerment of both of her children at trial and that the interests of the children were
addressed by the evidence. The Department asserts that appellant engaged in conduct which
endangered her children by (1) permitting Duarte, a convicted child abuser, to have contact with her
children, (2) leaving her children with inappropriate caretakers, (3) failing to seek medical treatment
for V.D. after her head injury, and (4) mistreating the children during supervised visits. The
Department concludes that appellant's failure to appropriately plan for her children's futures, her
inability to provide for the emotional and physical needs of the children and to protect the children
from abuse, her poor parenting skills, her lack of interest in receiving help from the Department, and
the instability of appellant's home environment indicate that termination of her parental rights was
in the best interest of F.D. and V.D. As to the testimony of appellant's grandparents, the Department
contends that the trial court did not abuse its discretion by excluding the testimony of the Leveretts. 
The Department also argues that, even if the testimony should have been allowed by the trial court,
the error was harmless.


Endangerment of the Children


 The jury was instructed that, in order to terminate the parent-child relationship, it had
to find by clear and convincing evidence that appellant endangered her children's physical or
emotional well-being either by her conduct or by means of their surroundings and that termination
was in the best interest of the children. The jury found that the children's well-being was
endangered. To affirm the termination decree, we must find that the evidence is legally and factually
sufficient to support only one of the grounds relied upon under sections 161.001(1)(D) and (E). Id.
§ 161.001(1)(D)-(E).

 In an involuntary termination proceeding, "endanger" means conduct that is more
than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. 
See Boyd, 727 S.W.2d at 533. However, the child need not suffer actual injury. Id. Rather,
"endangerment" means to expose to loss or injury; to jeopardize. Id.; see also In re M.C., 917
S.W.2d 268, 269 (Tex. 1996); Leal, 25 S.W.3d at 324. Endangerment may occur not only from a
parent's acts, but also from a parent's failure to act. Phillips v. Texas Dep't of Protective &
Regulatory Servs., 25 S.W.3d 348, 353 (Tex. App.--Austin 2000, no pet). Further, a parent's
endangering conduct toward one sibling is sufficient to support termination of a parent's rights to
all of her children. Lucas v. Texas Dep't of Protective & Regulatory Servs., 949 S.W.2d 500, 503
(Tex. App.--Waco 1997, writ denied); see also Dir. of the Dallas County Child Protective Servs.
Units v. Bowling, 833 S.W.2d 730, 733 (Tex. App.--Dallas 1992, no writ).

 The evidence supports the jury's finding that the children's well-being was
endangered. The evidence indicates that appellant was aware of Duarte's previous conviction of
injury to a child. Appellant claims that she was unaware of the conviction; however, the jury was
presented with evidence to the contrary. Despite the likely knowledge of matters that should have
caused her grave concern, she did not take measures to remove her children from Duarte's presence. 
Although F.D. did not suffer physical injury, he suffered not only the trauma of being present at the
time of the assault, but most likely the emotional trauma of witnessing Duarte's abuse of V.D. as
well. 

 Appellant was in a state of denial about the abuse Duarte inflicted upon her daughter. 
She and her family refused to acknowledge that Duarte injured V.D. Appellant continued to defend
her husband and financially supported him after he was arrested for V.D.'s injuries. Appellant
expressed a desire to reunite her children with Duarte in the future. Appellant's extreme state of
denial was evidence that her children were endangered.

 Appellant specifically endangered V.D. by not seeking immediate medical treatment
for her head injury. Despite observing extensive bruising and severe swelling of V.D.'s head on
January 12, appellant did not take her daughter to the doctor until January 14. Once it was
determined that V.D. was most likely injured intentionally, appellant became argumentative and
denied that her husband could have been responsible, creating various excuses for V.D.'s injuries. 
Appellant protested her husband's culpability even after she was confronted with his confession to
having intentionally injured the child.

 Appellant also endangered the physical and emotional well-being of both V.D. and
F.D. during her supervised visits with the children at the Department after they were removed and
placed in foster care. Appellant would unnecessarily spank and slap F.D. On one occasion, to
prevent F.D. from climbing up onto a small table, appellant pulled him down by the leg, causing F.D.
to hit his head. Appellant chastised F.D. for having caused V.D.'s injuries and Duarte's time in jail. 
Appellant also called her children "brats." Appellant deliberately ignored feeding instructions for
V.D., giving her juice on several occasions instead of a special formula, as directed by the doctors. 
This resulted in V.D. vomiting excessively during one visit.

 The evidence factually and legally supports a finding that the physical or emotional
well-being of the children was endangered by appellant's conduct or omissions or the environment
in which appellant placed them. This finding alone is not sufficient to terminate parental rights;
termination must also be in the best interest of the children. Tex. Fam. Code Ann. § 161.001(1), (2).


Best Interest of the Children

 The Texas Supreme Court has recognized the following factors that may be
considered in determining whether termination is in a child's best interest: (1) desires of the children;
(2) emotional and physical needs of the children now and in the future; (3) emotional and physical
danger to the children now and in the future; (4) parental abilities of the individuals seeking custody;
(5) programs available to assist these individuals to promote the best interest of the children; (6)
plans for the children by these individuals; (7) stability of the home or proposed placement; (8) acts
or omissions of the parent; and (9) any excuse for the acts or omissions of the parent. Holley v.
Adams, 554 S.W.2d 367, 372 (Tex. 1976). This list of relevant considerations is not exhaustive;
other factors may be considered when appropriate. Leal, 25 S.W.2d at 322. Likewise, a fact finder
is not required to consider all of the listed factors. Id. Several Holley factors are raised by the
record.

 At the time of trial, V.D. and F.D. were too young to verbally express their desires. 
However, the children's behavior during scheduled visits with their mother suggests that neither
child bonded to appellant. This same evidence also strongly indicates that appellant did not meet
the emotional needs of the children. F.D. showed no emotion upon seeing his mother and would
crawl out of the room instead of to his mother when he became upset. Witnesses indicated that
appellant made no efforts to console F.D. on such occasions, but instead claimed that he was an
independent baby. The testimony also suggests that appellant would not be able to fully meet the
physical needs of her children. For example, during one supervised visit, appellant allowed V.D.
to remain in a wet diaper, ignoring both the cries of her daughter and the prompting of the
caseworker to change the diaper. In addition, as previously noted, appellant did not use proper
feeding habits with V.D. despite previous instructions.

 Appellant's general state of denial is the primary indicator that the children faced and
would continue to face endangerment to their physical and emotional well-being. The Department
gave appellant several chances to improve her parenting skills and her attitude about the abuse
through various parenting classes and counseling sessions; however, appellant showed no signs of
improvement. She continued to blame F.D. for V.D.'s injuries and failed to hold herself or Duarte
accountable. In fact, appellant reported to counselors that she was the victim, not her children.

 The evidence factually and legally supports a finding that termination was in the best
interest of the children. Therefore, we cannot find that the trial court reversibly erred by terminating
the parent-child relationship between appellant and her two children. We overrule appellant's first
issue on appeal.


Excluded Testimony

 Appellant argues that the trial court erred when it excluded the testimony of Charles
and Barbara Leverett, appellant's grandparents. Appellant did not designate Charles or Barbara
Leverett as potential fact witnesses in response to the Department's request for disclosure. 
Appellant, instead, decided to call the Leveretts as witnesses after the trial began. The Department
objected to the presentation of the Leveretts' testimony, and the trial court excluded the testimony. 
Appellant claims on appeal that under Texas Rule of Civil Procedure 193.6(a), the testimony should
have been permitted because there was either good cause for not disclosing the witnesses sooner or
that the Department did not suffer any unfair surprise. See Tex. R. Civ. P. 193.6. Rule 193.6 states:


A party who fails to make, amend, or supplement a discovery response in a timely
manner may not introduce in evidence the material or information that was not timely
disclosed, or offer the testimony of a witness (other than a named party) who was not
timely identified, unless the court finds that: (1) there was good cause for the failure
to timely make, amend, or supplement the discovery response; or (2) the failure to
timely make, amend, or supplement the discovery response will not unfairly surprise
or unfairly prejudice the other parties.


Id.

 Regardless of whether the Department suffered unfair surprise or whether appellant
had good cause for the delay, the court should have admitted the testimony because the best interest
of children was at stake. See In re P.M.B., 2 S.W.3d 618, 624 (Tex. App.--Houston [14th Dist.]
1999, no pet.). The court stated in In re P.M.B. that "in determining issues regarding the
conservatorship of, possession of, and access to a child, the court's primary consideration is always
the best interest of the child. Compared to the best interest of the child, technical rules of pleading
and practice are of little importance in determining child custody issues." Id. It is in the court's
primary interest to have as much evidence before it as possible. Id. Therefore, the trial court should
have allowed the testimony of the Leveretts.

 Nonetheless, any error the trial court may have made was harmless in this case. 
Under Texas Rule of Appellate Procedure 44.1(a), "No judgment may be reversed on appeal on the
ground that the trial court made an error of law unless the court of appeals concludes that the error
complained of . . . probably caused the rendition of an improper judgment." Tex. R. App. P.
44.1(a)(1). Therefore, reversal is not required if the testimony is merely cumulative and not
controlling. Mentis v. Barnard, 870 S.W.2d 14, 16 (Tex. 1994).

 Charles and Barbara Leverett were to testify about appellant's abilities as a parent and
the condition of their household while appellant was living there with the children. Testimony by
appellant's mother had already been heard in appellant's favor. Appellant's mother testified that
appellant was a loving and caring mother. Appellant's mother also discussed the conditions of the
Leveretts' home, refuting testimony that their home was inappropriate for the children. Finally, the
Leveretts' testimony was not controlling because it only enlightened the jury on one of the Holley
factors considered by the jury: appellant's parenting abilities. The jury had evidence on the other
Holley factors and endangerment issues upon which it could have based its decision. Therefore, the
error of the trial court did not lead to the rendering of an improper judgement. We overrule
appellant's second issue on appeal.


CONCLUSION


 We conclude that the evidence is legally and factually sufficient to determine that the
children's physical and emotional well-being was endangered and that the termination was in the
best interest of the children. Any error that the trial court may have made by excluding the testimony
of the Leveretts was harmless. We, therefore, affirm the termination decree.



 

 David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 10, 2001

Do Not Publish



ting
the parent-child relationship between appellant and her two children. We overrule appellant's first
issue on appeal.


Excluded Testimony

 Appellant argues that the trial court erred when it excluded the testimony of Charles
and Barbara Leverett, appellant's grandparents. Appellant did not designate Charles or Barbara
Leverett as potential fact witnesses in response to the Department's request for disclosure. 
Appellant, instead, decided to call the Leveretts as witnesses after the trial began. The Department
objected to the presentation of the Leveretts' testimony, and the trial court excluded the testimony. 
Appellant claims on appeal that under Texas Rule of Civil Procedure 193.6(a), the testimony should
have been permitted because there was either good cause for not disclosing the witnesses sooner or
that the Department did not suffer any unfair surprise. See Tex. R. Civ. P. 193.6. Rule 193.6 states: